GETTY REALTY CORPORATION, Landlord, Respondent, *v.* 2 EAST 61ST STREET CORPORATION, Tenant, Appellant, and FULTON TRUST COMPANY OF NEW YORK and Others, Intervenors, Appellants.*

Supreme Court, Appellate Term, First Department, May 2, 1939.

*Root, Clark, Buckner & Ballantine*, for the tenant, appellant.

*Beekman, Bogue, Leake, Stephens & Black*, for the intervenor, appellant, Fulton Trust Company of New York.

* Revg. 169 Misc. 976.

*White & Case,* for the Manufacturers Trust Company, intervenor, appellant.

*Abraham N. Geller,* for J. Frederick Hartfield and others, intervenors, appellants.

*Szold & Brandwen,* for the World Investment Trust and others, intervenors, appellants.

*Stanchfield & Levy [David S. Hecht, Henry J. Oechler* and *William W. Golub* of counsel], for the landlord, respondent.

HAMMER, J. Summary proceeding by grantee of lessor against assignee of lessee for holding over the term.

The petition alleges that under the twenty-year lease and modification thereof there became due and unpaid over a period extending from June 1, 1935, to October 31, 1938, rent amounting to $279,531.89, default continuing for thirty days after written notice given by the landlord; that pursuant to the lease five days' written notice was given to the tenant, and the tenant's term expired by conditional limitation December 7, 1938.

The present landlord, Getty Realty Corporation, took title from the Gerry Estates, Inc., by a deed delivered October 21, 1938. The contract of sale under which the deed was given provided for the transfer of the demised premises and other property. It is dated October 14, 1938, and was made by the Gerry Estates, Inc., as seller, and the Getty Realty Corporation, landlord herein, and George F. Getty, Inc., and Santa Fe Investment Company, described as " purchasers " in said contract, and contained the provision that " all rents which are now due or which may hereafter become due shall belong to the purchasers."

The landlord put in evidence a paper dated October 11, 1938, executed by the purchasers named in the contract of sale which recited that the parties were about to enter into a contract for the purchase of the demised premises and other property, and stated that Getty Realty Corporation was to purchase the real property together with the buildings and improvements and appurtenances, and the furniture and other personal property used in the operation of the hotel premises, and George F. Getty, Inc., and Santa Fe Investment Company were to purchase the other property as provided in said agreement; the entire purchase price to be paid " in the first instance " by the realty corporation, landlord herein.

On the trial the landlord sought to prove that prior to the execution of the above agreement of October eleventh an oral agreement was made by the parties to that agreement allocating to the present landlord the ownership of the sum of $279,531.89, the total amount of the rent arrears at the time of the delivery of

the deed on October 21, 1938. In support of the alleged allocation the landlord also offered in evidence two papers executed after the commencement of the summary proceeding, one by the grantor Gerry Estates, Inc., stating in substance that it was the intention on the closing of title that the deed of the premises passed to the landlord herein any and all of the grantor's right to the $279,531.89 arrears of rent, and the other executed by the three purchasers named in the contract of sale stating that it was agreed at the time of the purchase that all rents due and to become due should go to the landlord herein. Objection to the introduction of these papers in evidence was sustained, and they were marked for identification.

After trial final order was awarded to the landlord in accordance with the prayer of the petition. The theory upon which the trial judge upheld the conditional limitation was that by the deed from the grantor all the rights accruing to the grantor upon the tenant's breach of the covenant to pay the rent passed to the grantee-landlord.

Appellants claim error on the following grounds:

1. The arrears of rent having become due prior to the deed to the landlord dated October 14, 1938, a limitation of the term could not be based upon failure to pay such arrears; and

2. The tenant being the owner of the building the landlord could not obtain possession of the building in this proceeding.

Taking the grounds of alleged error in inverse order, paragraph 19th of the lease provides that if the lessor obtain possession of the premises at any time by virtue of any stipulation in the lease or by legal process or by operation of law, " the lessor may hold, use, enjoy, occupy and rent any new buildings hereafter erected upon the demised premises [the old buildings having been torn down and new buildings erected on the land] as long as it may desire, and shall be entitled to all rents and income received therefrom without liability to account to the lessee, its legal representatives or assigns therefor, or for any part thereof." It seems to me that under the foregoing provisions no obstacle is presented to possession by the lessor in the event of a final order in its favor.

There is no provision in the deed purporting to transfer the arrearage of rents to the grantee, and in the absence of such transfer the present landlord had no right to rents which had become due at the time of the passing of title. Further, it has been held by this court that a grantee to whom the grantor has assigned rents which had become due at the time of the conveyance cannot maintain summary proceedings for non-payment of such rent; that the reference in section 223 of the Real Property Law to assignees of

rents is to assignees of rents accruing after the grants therein referred to. (*810 West End Ave.* v. *Frankel*, 113 Misc. 338; Code Civ. Proc. § 2674, now Surr. Ct. Act, § 204; and see *Printerion. Realty Corp.* v. *Fischer-Partelow, Inc.*, 167 Misc. 452; *Manqueen Corp.* v. *Baumann*, 162 id. 602.)

If summary proceedings for non-payment of rent may not be maintained except upon a breach of the covenant to pay rent accruing after the creation of the conventional relation between the parties, it would seem that the more drastic remedy of limiting the term and dispossessing the tenant on the ground that his term has expired cannot be based upon an assignment of rents in arrears at the time of the conveyance of the premises, for this limitation proceeding is also founded on the tenant's breach of the covenant to pay rent and the consequent forfeiture of the term after notice.

No finding was made by the trial judge on the question of the alleged oral allocation of the rent prior to the execution of the written allocation and the contract of sale of October 14, 1938. Roland, the landlord's president, testified that prior to October eleventh, the date of the written allocation, there were conversations among the purchasers concerning the allocation of the property to be transferred by the contract including the rents. However, the written agreement reciting the allocation of the property to be purchased and testified by the landlord's witness Hatfield to have been the result of the conversations concerning the allocation of the different properties under the contract of sale, makes no reference to the item of $279,531.89 rent in arrears. It is inconceivable if there had been an allocation of the rents as claimed and the written agreement was the result, that the allocation of the $279,531.89 item should have been omitted, leaving the ownership of that large sum dependent upon an oral understanding.

Further, if there had been an oral allocation of the rent arrears to Getty Realty Corporation alone it would seem that the contract of sale drawn by skillful counsel within three days thereafter would have made that specific provision instead of the provision that " all rents which are now due or which may hereafter become due shall belong to the purchasers," of which there were three.

Then again the witness Hatfield testified that at the time of the closing of title, October twenty-first, " either Mr. Hecht [landlord's counsel] or myself — I am not sure which one of us suggested it, but one of us — suggested that the Getty Realty Corporation [landlord herein] shall become the purchaser of the fee, the rent, the furniture and all of the interests of the landlord under the lease, that George F. Getty, Inc., should become the purchaser of only the stock of 2 East 61st St. Corporation which was being

purchased from the Gerry Estates [the seller] and that Santa Fe Investment Company should become the purchaser of only the bonds and debentures which were being purchased from the Gerry Estates."

It may well be asked if an agreement had been made prior to and on October eleventh allocating the rent in arrears among the purchasers, why should the matter be open for a suggestion by the purchasers' attorney at the time of the closing of title October twenty-first? The same witness testified that at the closing the seller's attorney in reply to the suggestion said he thought " such further confirmation was unnecessary," and the purchasers' attorney " agreed with him to let it go at that."

Assuming, however, a finding that an oral allocation of the rent arrears was made to the landlord prior to the delivery of the deed as claimed would be warranted, as before stated summary proceedings could not be maintained by the present landlord based upon non-payment of the past due rents. In the light of the above assumption it seems unnecessary to consider the effect of ownership of the rents not solely by the landlord herein but by all of the " purchasers " under the contract of sale.

From time to time the lessor-landlord Gerry Estates, Inc., by so-called deferment agreements had extended the time of the tenant to pay the rents due under the lease. In the last of these agreements, contained in a letter from the former landlord to the tenant dated May 25, 1938, five months before the delivery of the deed to the present landlord, it is stated: "After considering your request we are willing to defer until October 31, 1938, the accumulated rent amounting to $240,231.61 and also the rent which may hereafter fall due under the lease up to and including October 31, 1938, upon the condition, however, that we reserve the right at any time to declare the whole or any part of said accumulated rent and the installments of rent then due and payable under the terms of the lease, due and payable at any time prior to October 31, 1938, upon thirty days' previous written notice to you." The default upon which the proceeding was based was for non-payment of $279,531.89 rent, made up of $240,231.61 due down to May 25, 1938, and the installment due under the lease on the first day of each subsequent month in advance down to and including October 1, 1938. Notwithstanding the landlord's notice of the default is dated November 1, 1938, the rent which became due in advance on that date for that month is no part of the sum upon which the forfeiture of the term upon limitation is predicated.

On the trial the justice held, and I think correctly, that the deferment postponing or extending the time of payment merely

suspended the landlord's right to maintain summary proceedings upon the tenant's defaults. That this was the intention and understanding and that all of the arrears had become due under the lease prior to October 21, 1938, the date of the delivery of the deed, although the time of payment was extended to October thirty-first following, appears not only from the deferment itself but also from the provision of the contract of sale appropriating the rents to the purchasers and from the two papers, one executed by the grantor and the other by the landlord and the copurchasers subsequent to the commencement of the summary proceeding hereinbefore referred to. The ownership of these rents by the landlord herein being thus dependent upon an assignment by the grantor the doctrine of the *Frankel* case (*supra*) seems to bar the limitation of the term claimed herein.

Final order reversed, with thirty dollars costs, and final order directed for the tenant, with costs.

McCook and FRANKENTHALER, JJ., concur.